# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **G&G CLOSED CIRCUIT EVENTS, LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **No. 1:24-CV-00658-RP** |
| | § | |
| **ONE TIME TAVERN LLC and** | § | |
| **JACKIE L RODRIGUEZ,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff G&G Closed Circuit Events, LLC's ("G&G") motion for default judgment, Dkt. 15, which the District Judge referred to the undersigned for report and recommendation. After reviewing G&G's motion and the relevant case law, the undersigned recommends that the District Judge grant the motion.

## I.    BACKGROUND

G&G owns the license to display pay-per-view sporting events in commercial settings, including bars. Dkt. 15-1, at 6. In its business as a license-holder, G&G typically sells sublicensing rights to commercial establishments, allowing the establishments to display the programs to their patrons in exchange for a fee. *Id.* at 6, 7. G&G held the exclusive commercial license to distribute and authorize the display of the June 25, 2021, *Johnson vs. Moldavsky* mixed martial arts bout. *Id.* at 6. G&G discovered that Defendants One Time Tavern LLC and its owner/manager

1

Jackie L. Rodriguez (collectively, "Defendants") streamed the program at their bar, One Time Tavern, without authorization through intercepting the satellite signals. *Id.* at 7-8.

G&G sued Defendants for the unauthorized broadcast under the Communications Act of 1934 ("FCA"), alleging violations of section 605 (unauthorized publication or use of communications) or 553 (unauthorized reception of cable service). Dkt. 1, at 5; 47 U.S.C. §§ 553, 605. Defendants did not appear or otherwise respond to G&G's complaint. G&G moved for, and the clerk entered, default. Dkts. 10; 11. Then, pursuant to the District Judge's order, Dkt. 13, G&G moved for default judgment. Dkt. 15. It now asks this Court to award it statutory damages under 47 U.S.C. § 605, along with attorneys' fees, costs, and interest. Dkt. 15, at 5 (stating that G&G moves for default judgment under § 605 because the transmission of the event originated via satellite).

## II.    LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to enter a default judgment against a defendant that has failed to plead or otherwise defend itself. Fed. R. Civ. P. 55(a)-(b). That said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment simply because the defendant is in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather,

a default judgment is generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

In considering G&G's motion, the Court must determine: (1) whether a default judgment is procedurally warranted; (2) whether G&G's complaint sets forth facts sufficient to establish that it is entitled to relief; and (3) what form of relief, if any, G&G should receive. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008); *see also J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015) (using the same framework).

## III.    DISCUSSION

### A.    Default judgment is procedurally warranted.

To determine whether entry of a default judgment is procedurally warranted, district courts in the Fifth Circuit consider six factors: "(1) whether material issues of fact are at issue, (2) whether there has been substantial prejudice, (3) whether the grounds for default are clearly established, (4) whether the default was caused by a good faith mistake or excusable neglect, (5) the harshness of a default judgment, and (6) whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).[1]

On balance, the *Lindsey* factors weigh in favor of entering a default judgment against Defendants. Because Defendants have not filed a responsive pleading, there

---

[1] G&G has established Defendants were properly served and the clerk entered default. Fed. R. Civ. P. 55(a); Dkts. 7; 8; 10; 11. Plaintiff has also established that no Defendant is "in military service." 50 U.S.C. § 3931; Dkt. 15-1, at 56-59.

are no material facts in dispute. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."). Defendants' failure to appear and respond has ground the adversary process to a halt, prejudicing G&G's interest in pursuing its claim for relief. *See J&J Sports*, 126 F. Supp. 3d at 814 ("Defendants' failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests.") (internal citation and quotation marks omitted). The grounds for default are established: Defendants were properly served and have failed to appear and participate at all, much less timely file a responsive pleading. *See* Dkts. 4, 5. There is no indication that the default was caused by a good-faith mistake or excusable neglect. The undersigned therefore finds that default judgment is procedurally warranted.

## B.    G&G's complaint is sufficient to establish its right to relief.

Default judgment is proper only if the well-pleaded factual allegations in Plaintiff's complaint establish a valid cause of action. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. By defaulting, a defendant "admits the plaintiff's well-pleaded allegations of fact." *Id.* In determining whether factual allegations are sufficient to support a default judgment, the Fifth Circuit employs the same analysis used to determine sufficiency under Rule 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The factual allegations in the complaint need only "be enough to raise a right to relief

above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten*, 788 F.3d at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While "detailed factual allegations" are not required, the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The FCA prohibits "intercept[ing] any radio communication[2] and divulg[ing] or publish[ing] the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person" without authorization from the sender. 47 U.S.C. § 605(a). Because the FCA is a strict-liability statute, G&G need only show that (1) the programs were shown in Defendants' establishment; (2) the programs were shown without G&G's authorization; and (3) G&G is the exclusive licensee. *J&J Sports Prods., Inc. v. El 33, LLC*, No. EP-11-CV-519-KC, 2013 WL 164521, at *3 (W.D. Tex. Jan. 14, 2013).

G&G is entitled to default judgment because it has shown each of these elements. First, G&G alleges that the bout was shown in Defendants' bar. Dkt. 1, at 4; *see* Dkt. 15-1, at 34-35 (affidavit of auditors who visited One Time Tavern while Defendants displayed the bout). Second, G&G alleges that it did not authorize

---

[2] The term "radio communication" includes satellite signals. *See J&J Sports Prods., Inc. v. Mandell Family Ventures, LLC*, 751 F.3d 346, 352-353 (5th Cir. 2014) ("A logical reading of the two provisions reveals a clear demarcation whereby [§] 605 deals with communications traveling through the air (via radio) [and] § 553 covers communications traveling over cable wire." (internal quotation marks omitted)); *Joe Hand Promotions, Inc. v. Lee*, No. H-11-2904, 2012 WL 1909348, at *3 (W.D. Tex. May 24, 2012) (stating that § 605 "addresses receipt of satellite signals").

Defendants to show the programs, stating that "Defendants willfully intercepted or received the interstate communication" of the bout. Dkt. 1, at 4. Third and finally, G&G alleges that it was the exclusive license-holder and attaches to its motion for default judgment evidence of its ownership of the license. Dkt. 1, at 3; *see* Dkt. 15-1, at 14-19 (copy of G&G's license). Because these allegations are enough to raise G&G's right to relief above the speculative level, the undersigned finds that default judgment is warranted here. *See Wooten*, 788 F.3d at 498.

### C.    G&G should receive statutory damages, attorneys' fees, costs, and post-judgment interest.

Federal Rule of Civil Procedure 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In other words, the relief prayed for in a complaint defines the scope of relief available on default judgment. *Id.*

A defendant's default concedes the truth of the allegations of the complaint concerning the defendant's liability, but not damages. *United States v. Shipco Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Ordinarily, damages will not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, when the amount of damages or costs can be determined with certainty by reference to the pleadings and supporting documents, and when a hearing would not be beneficial, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *Id.* at 311.

6

Because the amount of damages and costs in this case can be ascertained with reference to the pleadings and supporting documents, the undersigned may determine the amount of damages Defendants owe based on the record. *See id.* at 310.

> 1. *G&G is entitled to $9,420 in statutory damages for Defendants' willful violation.*

Section 605 permits statutory damages for each violation of the type in this case "in a sum of not less than $1,000 or more than $10,000, as the court considers just." *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). G&G seeks $10,000 for the violation. Dkt. 15, at 6. Courts in the Western District of Texas have awarded damages under this section based either on the number of patrons in the establishment at the time of the alleged violation or on the amount that the defendant would have paid for a sublicense to show the match. *See, e.g.*, *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008) (number of patrons); *El 33*, 2013 WL 164521, at *4 (sublicense fee). "[T]he award remains within the court's discretion." *G&G Closed Circuit Events, LLC v. 528 Inv-Jev, LLC*, No. EP-20-CV-95-KC, 2021 WL 12307444, at *3 (W.D. Tex. June 9, 2021).

G&G alleges that One Time Tavern's approximate capacity is 125 people. *See* Dkt. 15-1, at 34. It provides a rate card which it alleges demonstrates that G&G typically charges establishments of that capacity $2,100 for the rights to show a mixed martial arts bout. *Id.* at 39. However, G&G admits that only 15 people were at One Time Tavern during the bout. *Id.* at 34. This suggests that whatever unfair gain came from the unauthorized showing—including, for example, profits that

Defendants made through enticing more people to come to One Time Tavern because it was showing the bout—is less than it would have been had the bar been closer to full capacity. Because of this, the undersigned calculates G&G's statutory damages based on the number of patrons in the establishment at the time of the alleged violation. *See Joe Hand Promotions, Inc. v. MGM Affair, LLC*, No. 1:23-cv-1438-RP, 2024 WL 5194843, at *3 (W.D. Tex. Oct. 21, 2024) (applying the same reasoning).

Approximately 15 people were at One Time Tavern during the bout. Dkt. 15-1, at 34. According to G&G's rate card for the bout, the cost to show the bout to that number of people would have been $1,570.[3] *Id.* at 39. Next, courts "normally treble[] the broadcasting fee to account for 'money saved by not complying with the law, as well as any profits made from food and drink sales associated with customers who stayed and watched the fight.'" *J&J Sports Prods., Inc. v. Rivera*, No. EP-14-CV-00343-KC, 2015 WL 1137473, at *4 (W.D. Tex. Mar. 12, 2015) (quoting *Garcia*, 546 F. Supp. 2d at 386). Thus, when multiplied by three, the total statutory damages for the violation becomes $4,710.

Section 605 further provides that, in cases where the defendant committed the violation "willfully and for purposes of direct or indirect commercial advantage or private financial gain," the court "in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000" for each violation of subsection (a). 47 U.S.C. § 605(e)(3)(C)(ii). Because of the "extreme

---

[3] The rate card contemplates a price of $1,400 for a capacity of 1 to 100 people, plus a $170 "activation fee." Dkt. 15-1, at 39.

unlikelihood" that Defendants could have inadvertently acquired the signal to show the bout and Defendants' failure to file an answer denying G&G's allegations, the undersigned finds that Defendants' violation was willful and for purposes of commercial advantage or private financial gain. *See id.*; *Garcia*, 546 F. Supp. 2d at 386; *see also Rivera*, 2015 WL 1137473, at *5 (finding that the defendant had admitted the plaintiff's allegation of willful and commercially advantageous conduct by her default).

Courts vary widely in their award of additional damages for willful violations, though most awards do not approach the statutory maximum. *See, e.g., Garcia*, 546 F. Supp. 2d at 386 (awarding $10,000 additional damages for a willful violation where 65-80 people viewed the unauthorized broadcast); *Rivera*, 2015 WL 1137473, at *5 (awarding $2,200 in addition to a $2,300 statutory damages award for a willful violation in which only 5 patrons viewed the program but the event was broadcast on the "big screen" and the defendant sold food and drinks during the broadcast); *G&G*, 2021 WL 12307444, at *4 (awarding $4,800 where the event was shown on 8 televisions to 50 patrons in an urban area, and where drinks were sold).

Among the factors courts consider in determining whether additional damages are due include "(1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee or charging premiums for food and drinks." *J&J Sports Prods., Inc. v. River Park Sports Bar*, No. Civ. A. H-15-2638, 2016 WL 6398491, at *9 (S.D. Tex. Oct. 28, 2016). G&G fails to demonstrate that Defendants have *repeatedly*

shown G&G-licensed programming without authorization. *See* Dkt. 15-1, at 7-8 (alleging only the June 25, 2021, violation). G&G does not allege that Defendants advertised the broadcast. *See* Dkts. 1; 15-1, at 10 (alleging generally that "[w]hen an unauthorized commercial establishment advertises the availability of the pirated programming," G&G suffers losses). Additionally, there is no evidence that Defendants charged an admission fee or cover, or that they increased prices for food and drinks in connection with their showing of the program. *See* Dkts. 1; 15-1, at 9 (alleging only that Defendants' patrons purchased food and drinks while viewing the event). In fact, G&G's auditor paid no cover to enter One Time Tavern at the time of the bout. Dkt. 15-1, at 34. Additionally, even assuming each of the patrons was enticed to purchase food and drinks because One Time Tavern was showing the bout, only a modest number of patrons were present at the time the fights. *Id.* at 9, 34. Therefore, there is no evidence that Defendants reaped *substantial* unlawful monetary gains.

Finally, while the undersigned wishes to send a strong signal that Defendants' activity "will not be profitable," the undersigned is mindful that Defendants' violations should not be punished "in a manner that imposes an insurmountable financial burden." *Garcia*, 546 F. Supp. 2d at 386. Given this, it is appropriate here to award additional damages in the amount of $4,710, doubling the award under § 605(e)(3)(C)(i)(II). In total, the undersigned recommends awarding G&G $9,420 in damages.

2.    *G&G is entitled to its requested attorneys' fees and costs.*

Section 605(e)(3)(B)(iii) provides that courts "shall direct the recovery of full costs, including reasonable attorneys' fees, to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). In addition to statutory damages, G&G asks for one-third of the total damages award in attorneys' fees. *See* Dkt. 15, at 12. Based on the affidavit from G&G's counsel and case law demonstrating that an award of one-third total damages is reasonable in anti-piracy suits, the undersigned finds that the requested award is reasonable. Dkt. 15-1, at 44-45; *see J&J Sports Prods., Inc. v. Casita Guanajuato, Inc.*, No. 1:13-ca-824-SS, 2014 WL 1092177, at *3 (W.D. Tex. Mar. 19, 2014) ("An award equal to one-third of the recovery … is reasonable for cases such as this, and is frequently the measure of attorney's fees used in Communications Act cases by federal courts in Texas."); *J&J Sports Prods., Inc. v. Hernandez*, No. 7:19-cv-00327, 2020 WL 2030026, at *5 (S.D. Tex. Apr. 28, 2020) (awarding one-third of the recovery); *but see G&G Closed Circuit Events, LLC v. Osmaynez, LLC*, No. EP-22-CV-00402-DCG, 2024 WL 4879494, at *6-7 (W.D. Tex. Nov. 25, 2024) (noting that courts differ on the method used to award attorneys' fees and finding that a one-third contingent fee would not adequately compensate plaintiff's attorney in an "unusually complex" case involving a default judgment).

G&G also requests attorneys' fees "in the event certain post-trial, pre-appeal and appellate services … are rendered." Dkt. 15, at 12-13. The undersigned finds that this request is premature and recommends denying the request without prejudice. *Osmaynez*, 2024 WL 4879494, at *7. Finally, as an award of costs is mandatory under

§ 605, the undersigned recommends requiring Defendants to pay G&G an award of costs to be determined pursuant to the Local Rules. *Id.*; W.D. Tex. Civ. R. 54(a)(1).

In accordance with the discussion above, G&G should receive $3,140 in attorneys' fees and reasonable costs under the Local Rules.

> ### 3. *G&G is entitled to post-judgment interest.*

G&G requests, and the undersigned recommends awarding, post-judgment interest. *See* Dkt. 15, at 13. Federal law provides that "[i]nterest shall be allowed on any monetary judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Therefore, G&G should receive post-judgment interest on the entire amount of the final judgment as calculated pursuant to § 1961.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT** Plaintiff G&G's motion for default judgment. Dkt. 15. G&G should be awarded $9,420 in statutory damages, $3,140 in attorneys' fees, costs, and post-judgment interest pursuant to 28 U.S.C. § 1961.

The referral of this case to the Magistrate Judge should now be canceled.

## V.    WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the

party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED April 25, 2025.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE